IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE INS. | ) | |
| CO. OF PITTSBURGH, PA., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:03cv878-C |
| | ) | (WO) |
| BILL G. CAVINS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this case, National Union Fire Insurance Company of Pittsburgh ("National Union") seeks indemnification from defendants Bill and Virginia Cavins ("Cavins") and Progressive Systems, Inc. ("Progressive") for expenses incurred as a result of settling 91 underlying state court claims against its insured, The Kirby Company ("Kirby"). National Union contends that it is due indemnification for expenses including attorney's fees in the amount of $748,462.75.

The court has jurisdiction of this action pursuant to its diversity jurisdiction. *See* 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

This court previously denied the plaintiff's motion for summary judgment on the grounds that National Union failed to demonstrate that it was entitled to judgment as a matter of law because it has failed to present any facts regarding whether the defendants received

timely and proper notice of the settlements; whether Kirby was legally liable in the underlying lawsuits; and whether the underlying settlements were reasonable and fair as required by Ohio law. *See* Doc. # 45.

National Union has since conceded in open court that because it cannot meet its burden regarding the underlying settlements pursuant to *Globe Indemnity Co. v. Schmitt*, 53 N.E.2d 790, 794 (Ohio 1944), it cannot recoup $830,550.00 paid in settlement of those lawsuits.

At this juncture, the sole remaining issue for the court is whether National Union, as a party to the indemnity agreement that requires indemnification for expenses incurred in the defense of certain claims brought by third parties, may recover attorney fees incurred in defending such a claim from the defendants, when, pursuant to *Globe, supra*, under Ohio law, National Union is prohibited from recovering amounts paid in settlement of the claim.[1]

## STATEMENT OF FACTS

On or about September 29, 1988, Bill G. Cavins (hereinafter referred to as "Cavins") entered into a "Distributor Agreement" with The Kirby Company (hereinafter referred to as "Kirby"). The agreement specified that Cavins was an independent contractor authorized to distribute Kirby products. The Distributor Agreement contains, among other things, an indemnification provision which provides:

> 10(b) Distributors Indemnification: Distributor shall indemnify the Company,

---

[1] Pursuant to a choice-of-law provision in the distributor agreement, this Court determined Ohio law to be controlling law.

its employees, agents and servants and hold the Company and its said employees, agents, and servants harmless from any and all liability, damage or expense incurred by it in connection with any claim, demand or suit based on Distributor's acts or omissions, including alleged negligence; provided, however, that the Company shall (1) give Distributor prompt written notice of any such claim, demand or suit, and (2) provide the Distributor with every reasonable assistance which the Distributor may request in resisting such claim, demand or suit. The foregoing shall not apply if the Company is found guilty of any negligence, misconduct or wrongdoing in connection with any such claim, demand or suit.

On or about February 16, 1996, Cavins assigned the Distributor Agreement to Progressive Systems, Inc. (hereinafter referred to as "Progressive"), a corporation that Bill Cavins and/or Virginia Cavins principally owned. Thereafter, Bill Cavins, Virginia Cavins, and Progressive (hereinafter referred to as "the Defendants"), sold vacuum cleaner systems, parts, or both which were manufactured by Kirby. In the course of these sales, the Defendants assisted the purchasers in obtaining financing for vacuum cleaners purchased by individuals who were unable to pay cash. As an independent contractor, Cavins retained control of his business operations, including the right to select which financing options he offered purchasers.[2] Cavins testified that Kirby did not control the price Progressive charged

---

[2] The undisputed evidence demonstrates that Kirby had no involvement in the financing of the vacuums. As Cavins testified:

> All the choices about outside financing, including which companies to use or recommend to our customers, are made solely by myself on behalf of Progressive. Specifically the decision to use [American Direct Credit LLC ("ADC")] as a source for consumer financing of vacuum cleaner sales was made entirely by me and without any involvement by [Kirby]. There are many other financing companies from which I could have chosen, but which I did not choose, because I preferred ADC and recommended them to my fellow Distributors. The selection of ADC was solely made by me alone, and [Kirby] had no involvement in that decision whatsoever, nor in any of the transactions in which ADC financing was obtained.

3

customers for vacuums; Kirby had no control over any aspect of Progressive's sales practices; Kirby did not control Progressive's day-to-day operations; and Kirby had no control over Progressive or Cavins' distributorship premises.

Subsequently, many of the purchasers filed suits and made claims (hereinafter collectively referred to as the "underlying actions") against the Defendants, Kirby, and others, alleging that the defendants in the underlying actions misrepresented the nature of the financing agreement offered. All of the plaintiffs purchased vacuum cleaners pursuant to open-end, revolving accounts with high interest rates. The purchasers/plaintiffs claimed that during the sales process, they were led to believe their accounts could be paid within a stated amount of time by paying a stated monthly payment, when in fact, the suggested amount was not nearly enough to pay off the debt due to the high interest rates on the accounts. The underlying state court actions included claims of fraud, negligence, wantonness, misrepresentation, and conspiracy to defraud.

National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union") defended Kirby in the underlying actions. Kirby subsequently settled 91 lawsuits

---

In addition, Kirby did not offer any financing options to its distributors for use with consumer purchasers. Cavins testified as to this fact as follows:

> Progressive's sales representatives are authorized, trained and equipped by Progressive to offer assistance to customers in financing their purchases. For this purpose, Progressive has sought and obtained its own contacts in the financing industry including, in the past, [ADC]. Progressive's sales representatives have been authorized by me alone to assist customers in making credit card applications to ADC for the issuance of a MasterCard or Visa credit card in order to charge their purchase. The Kirby Company is not, and never has been, a party to those transactions and it has no knowledge or control over selection of outside financing.

for a total of $830,550.00. (Pl's Ex. F attached to Mot. for Summ. J., Affidavit of Bill Daniels, at p. 2, ¶ 3.) National Union incurred a reported $748,462.75 in attorney's fees while defending Kirby. (*Id*. at ¶ 5). Pursuant to the indemnification provision of the Distributor Agreement quoted above, Kirby demanded that the defendants defend and indemnify it in the underlying actions. The parties agree that the Distributor Agreement remained in full force and effect at the time the underlying actions arose. Cavins' liability insurance carrier, Colorado Casualty, denied Kirby's demand for defense and indemnification as the plaintiffs in the underlying action made independent allegations of misconduct and resultant tort liability against Kirby. At all times during the underlying actions, Kirby denied liability to the plaintiffs and, in this action, maintains that it is not guilty of any misconduct, negligence, or wrongdoing regarding the individual plaintiffs.

## DISCUSSION

The law in Ohio is well-established that when the party claiming the benefit of the indemnity agreement is unable to prove that the party from whom indemnity is claimed received proper and timely notice of the settlement, that it was legally liable to third parties, and that the settlement effected was fair and reasonable, the party is prohibited from recovering amounts paid in settlement of the claim. *See Globe,* 53 N.E.2d at 794. *See also Convention Center Inn, LTD v. Dow Chemical Co.*, 590 N.E.2d 898, 900 (Ohio Ct. App. 1990) *quoting Globe*, *supra*. *See also Blair v. Mann*, 1999 WL 228265, *2 (Ohio Ct. App. 1999) (No. 98CA35); *Ozko, Inc. v. Isaacson Construction, Inc.*, 1995 WL 678548 , *4 (Ohio

Ct. App. 1995) (C.A. No. 17078); *Jones v. Bank One*, 1998 WL 892245, *2 (Ohio Ct. App. 1998) (No. C-980097); *LoPresti v. TransOhio Sav. Bank*, 1992 WL 126033, *5 (Ohio Ct. App. 1992) (No. 60667). National Union concedes that it cannot establish that it was legally liable in the underlying lawsuits, nor can it establish that the settlements in the underlying actions were fair and reasonable. Consequently, National Union concedes that, under Ohio law, it is not entitled to indemnification of the amounts paid in settlement of the underlying actions.

National Union argues nonetheless that, pursuant to the indemnification agreement, it is entitled to $748,462.75 in attorney fees incurred in the defense of the underlying actions.[3] National Union argues that, even if the court correctly applied *Globe, supra*, to the recovery of settlement costs, under *Ozko, Inc.*, *supra*, National Union is still entitled to recover attorneys' fee as expenses incurred as "'expenses whatever connected or associated with any such [...] claims.'" *Id*. at *3. In other words, National Union contends that attorneys' fees are not subject to the *Globe* requirements, and, therefore, the indemnification contract is binding and it is entitled to recover attorney fees and expenses.

The defendants contend that the general rule denying indemnification to joint tortfeasors should be applied in this case and that National Union is not entitled to indemnification under the Distributor Agreement because of Kirby's own wrongful conduct. Furthermore, the defendants assert that, pursuant to the terms of the indemnification

---

[3] Kirby assigned its right to pursue indemnity under the Distributor's Agreement to National Union.

agreement, National Union can only recoup expenses "incurred in defense of claims based solely on "acts or omissions" of the [defendants.]" (Br. of Def., doc. # 62, at 6).

The remaining question before the court therefore is whether National Union may obtain indemnification for expenses incurred in the defense of the underlying actions, notwithstanding its inability to recoup the amounts paid in settlement of those actions. The Ohio Supreme Court declined to answer this Court's certified question on this specific issue. Accordingly, this Court has no choice but to rely on "the opinions of intermediate appellate courts [to] provide the next best indicia of the state's position." *CIT Group/Equip. Fin., Inc. v. New GIFL, Inc.*, 823 F.Supp. 479, 485 (N.D. Ohio 1993) *quoting Matulin v. Village of Lodi*, 862 F.2d 609, 616 (6th Cir. 1988).

"In determining whether an indemnity agreement provides for the indemnification of attorney fees, courts must examine the language used in the agreement." *Motorist Ins. Cos. v. Shields*, 2001 WL 243285, *5 (Ohio Ct. App. 2001).

> In determining the scope of an indemnity contract, a court must look to the intent of the parties as it is expressed in the language of the agreement. *Worth v. Aetna Cas. & Sur. Co.*, (1987) 32 Ohio St. 3d 238, 240. A court should interpret all words in "their ordinary and popular sense." *Id.*, at 240. When a writing employs clear, precise, and unambiguous terms, a court should give it that "meaning which [the words] naturally present." *Id.*, at 240-241.

*Ozko, Inc.*, *supra* at *3. *See also Rubbermaid, Inc. v. Massey Constr., Inc.*, 42 F.3d 1389, *3 (6th Cir. 1994) (Table, Text in Westlaw, NO. 93-6014). *See also Associated Maint. & Roofing Co. v. Rockwell Int'l Corp.*, 1994 WL 109003, *3 (Ohio Ct. App. 1994).

In this case, the indemnification clause in the contract provides that:

> . . . the Distributor shall indemnify the Company, its employees, agents and servants and hold the Company and its said employees, agents, and servants harmless from *any and all liability, damage or expense incurred by it* in connection with *any claim, demand or suit based on Distributor's acts or omissions, including alleged negligence*; provided, however, that the Company shall (1) give Distributor prompt written notice of any such claim, demand or suit, and (2) provide the Distributor with every reasonable assistance which the Distributor may request in resisting such claim, demand or suit. The foregoing shall not apply if the Company is found guilty of any negligence, misconduct or wrongdoing in connection with any such claim, demand or suit.

(emphasis added).

By its terms, the agreement plainly contemplates indemnification of expenses incurred as the result of "any claim, demand or suit" based on any act or omission by the defendants including any alleged negligence. Under Ohio law, the term 'expenses' includes attorney fees. *Auber v. Marc Glassman, Inc.*, 2002 WL 1265589, *3 (Ohio Ct. App. 2002) (NO. 80283) ("The words "any other expenses" should be given their plain meaning and must therefore include all expenses arising out of the incident including attorneys fees and other associated expenses."); *Gen. Accident Fire & Life Assurance Corp. Ltd. v. Smith & Oby Co.*, 272 F.2d 581, 586 (6th Cir. 1959) ("The indemnity agreement provides for the payment of expenses and it seems obvious that liability on the agreement carries with it costs and attorney fees as well as the amount of settlement."). Accordingly, the court concludes that the indemnification agreement contemplates the reimbursement of attorney fees.

The defendants argue that the indemnification agreement only requires payment of expenses "incurred in defense of claims based <u>solely</u> on "acts or omissions" of the [defendants.]" (Br. of Def., doc. # 62, at 6). The court disagrees. A plain reading of the

8

agreement does not limit indemnification to claims based *solely* on the defendants' actions. The parties could have limited the agreement to claims based solely on the acts or omissions of the defendants. However, in this case, there is simply no language suggesting that the parties made that choice, and there definitely is no express language establishing that limitation. "[A] party wishing to narrow an indemnification clause to third-party damage is obligated to limit the scope of the clause expressly; and absent such express limitation, indemnification clauses may apply to damage suffered by the contracting parties themselves." *Battelle Mem'l Inst. v. Nowsco Pipeline Servs., Inc.* 56 F.Supp.2d 944, 951 (S.D. Ohio 1999).

The indemnification agreement limits reimbursement but only to those circumstances in which Kirby was "found guilty of any negligence, misconduct or wrongdoing in connection with any such claim, demand or suit." Thus, it is plain that the parties knew how to construct a limitation on indemnification liability when they wanted to do so. The absence of express words limiting indemnification for expenses is dispositive.[4]

"When an indemnitor expressly agrees to indemnify an indemnitee except in certain specified circumstances, and it is determined that the exceptions do not pertain, the indemnitor is obligated to indemnify the indemnitee under the terms of the agreement."

---

[4] Although the defendants continue to argue that Kirby was guilty of misconduct, in accordance with Ohio law, the court must give the all terms in the agreement "their ordinary and popular sense." *Worth,* 513 N.E. at 256; *Ozko, Inc.*, *supra* at *3. The defendants have presented no evidence that Kirby was "*found* guilty of misconduct." (emphasis added). Accordingly, the court concludes that this express limitation on indemnification does not apply under the facts of this case.

*Worth*, 513 N.E. at 256.  *See also Allen v. Standard Oil Co.*, 443 N.E.2d 497, 500 (Ohio 1982).  Accordingly, the court concludes that National Union is entitled to an award of reasonable attorney's fees in accordance with the indemnification contract.

Under Ohio law, "the award of attorney fees is to be a reasonable amount determined by the trial court upon presentation of sworn evidence."  *Pyle v. Pyle*, 463 N.E.2d 98, 104-105 (Ohio Ct. App. 1983).  *See also Meacham v. Miller*, 606 N.E.2d 996, 1000 (Ohio Ct. App. 1992).  However, the court does not have before it any evidence supporting National Union's claim for $748,462.75 in fees or whether National Union's request for fees in the amount of $748,462.75 is reasonable under the circumstances.  "In order to allow an award of attorney fees, there must be evidence concerning the proper measure of such fees."  *Auber*, 2002 WL 1265589 at 3.

> The factors to consider when awarding attorney fees are "'* * * (1) the time and labor involved in maintaining * * * [the] litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary legal services, (4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of * * * [the] litigation.'" *Hutchinson, supra,* 17 Ohio St.3d at 200, 17 OBR at 437, 478 N.E.2d at 1005, citing *State, ex rel. Montrie Nursing Home, Inc., v. Creasy* (1983), 5 Ohio St.3d 124, 128, 5 OBR 258, 262, 449 N.E.2d 763, 767. Additional factors to consider are "[t]he fee customarily charged in the locality for similar legal services" and "[t]he amount involved and the results obtained." DR 2- 106(B), Code of Professional Responsibility. Also, there must be evidence presented at trial concerning the proper measure of attorney fees in order to allow an award. *Hutchinson, supra.*

*Villella v. Waikem Motors, Inc.*, 45 Ohio St.3d 36, 41, 543 N.E.2d 464, 470 (Ohio 1989); *Pyle*, *supra*.  Consequently, while the court concludes National Union is entitled to an award

10

of reasonable attorney's fees in accordance with the indemnification contract, the court is without sufficient evidentiary basis to determine what constitutes a reasonable attorney fee.

## CONCLUSION

Accordingly, before proceeding further, the parties are

ORDERED, not later than sixty (60) days from the date of this order, to engage in good faith negotiations, including mediation if the parties so choose, regarding what constitutes a reasonable attorney fee in this matter.  The parties shall report the results of the good faith negotiations within seven (7) days of the conclusion of the negotiations.  It is further

ORDERED that National Union's request for indemnification for the amounts of the settlements in the underlying state court actions be and is hereby DENIED.  Upon the resolution of the attorney fees' issue, the court will enter a final judgment.

Done this 9th day of March, 2006.

                                                  /s/Charles S. Coody
                                                CHARLES S. COODY
                                                CHIEF UNITED STATES MAGISTRATE JUDGE